# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DERICK EDWARDS,

       Plaintiff,

v.                                  Case No: 2:19-cv-711-SPC-NPM

CITY OF FORT MYERS,
RANDY HENDERSON, SEAN
HAVENNER, GUILLERMO
MONMANY, JAMES
HEUGLIN, BRIAN RHOTON,
ARTURO GONZALEZ, JR. ,
LEE COUNTY, CARMINE
MARCENO, DERRICK DIGGS
and MARK MALLARD,

       Defendants.

_____/

## OPINION AND ORDER[1]

    Before the Court are three motions to dismiss.[2]  They are brought by

Defendant Arturo Gonzalez, Jr. (Doc. 118), Defendants City of Fort Myers,

Derrick Diggs, and Randy Henderson (Doc. 119), and Defendant Lee County

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Defendant Mark Mallard's motion to dismiss is also pending before the Court. But pro se Plaintiff Derick Edwards has not responded, and the time to do so has expired.  Because of the arguments advanced by Mallard and Edwards' pro se status, the Court will give Edwards one final opportunity to respond to Mallard's motion.

(Doc. 132).   Plaintiff Derick Edwards has responded to two of the motions. (Doc. 136; Doc. 138).

## BACKGROUND

Edwards brings a 42 U.S.C. § 1983 suit against the City, Lee County, and several city and county officials involved in an incident that occurred on October 7, 2015.

These facts from the Second Amended Complaint are assumed to be true and viewed in a light most favorable to Edwards for evaluating the pending Motions.   On October 7, 2015, Defendants Sean Havenner, Guilleramo Monmany, and Brian Rhoton (law enforcement officers) activated their emergency lights and sirens and pulled over Edwards as he was driving.   (Doc. 92 at 9,   ¶ 5).   Havenner, Monmany, and Rhoton got out of their cars, drew their guns, and ordered Edwards to exit his vehicle.   (Doc. 92 at 9,   ¶ 6). Edwards retrieved his driver's license and gave it to Monmany.   (Doc. 92 at 9, ¶ 7).   Defendants Arturo Gonzalez, James Heuglin, and Mark Mallard then arrived on the scene.   (Doc. 92 at 9,   ¶ 8).

After Edwards exited the vehicle, he asked why he had been pulled over. Monmany responded they would run his name and check his driver's license to make sure it was valid and ensure he had no outstanding warrants.   (Doc. 92 at 9,   ¶ 9).   After determining there were no warrants, the officers asked

Edwards if he had any drugs on him or in his car.  Edwards said no.  (Doc. 92 at 9, ¶ 10).  The drug dog confirmed Edwards.  (Doc. 92 at 9, ¶ 11).

Edwards then got permission to retrieve his cell phone from his car. (Doc. 92 at 10, ¶ 12).  As he turned to walk back, Havenner, Monmany, Gonzalez, Heuglin, and Rhoton tased Edwards multiple times on his chest, stomach, arms, and shoulders.  (Doc. 92 at 10, ¶ 12).  He screamed and writhed in pain.  (Doc. 92 at 10, ¶ 12).

Edwards fell to his knees.  (Doc. 92 at 10, ¶ 13).  While on his knees, Havenner, Monmany, and Gonzalez kicked him in his back, causing Edwards to fall to the ground.  (Doc. 92 at 10, ¶ 13).  Edwards never hit, kicked, punched, or threatened the officers.  (Doc. 92 at 10, ¶ 13).

The officers handcuffed Edwards and turned him on his stomach.  (Doc. 92 at 10, ¶ 13).  While lying on his stomach, the officers repeatedly tased Edwards' back.  (Doc. 92 at 10, ¶ 13).  After the tasing stopped, the officers kicked and beat Edwards' head, body, and extremities.  (Doc. 92 at 10, ¶ 13). Rhoton stepped on Edwards' hand throughout the beating, while Gonzalez stepped on Edwards' right foot.  (Doc. 92 at 10, ¶ 14).  While the other officers used excessive force, Mallard stood by and failed to help.  (Doc. 92 at 11, ¶ 15). Edwards was not resisting and tried to comply with the officers' commands. (Doc. 92 at 11, ¶ 17).

Edwards suffered physical and mental injuries from the alleged beating that required medical treatment.  (Doc. 92 at 13, ¶¶ 22-23).

The operative pleading is the Second Amended Complaint.  (Doc. 92). Heuglin, Marceno, Monmany, and Rhoton have filed an answer.  (Doc. 124). Gonzalez, Mallard, Lee County, the City, Diggs, and Henderson have moved to dismiss Edwards' claims against them.

## LEGAL STANDARD

"To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007).  A claim is facially plausible when the Court can draw a reasonable inference from the facts pled that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.  But "[f]actual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).  Thus, the Court engages in a two-step approach: "When there are well pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must first allege a violation of a right secured by the Constitution or under the laws of the States; and, second, allege that the deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1988). "[C]omplaints in § 1983 cases must . . . contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2020) (citation and internal quotation marks omitted). Further, the plaintiff must allege a causal connection between the defendant's conduct and the alleged constitutional deprivation. *Swint v. City of Wadley, Ala.*, 51 F.3d 988, 999 (11th Cir. 1995).

Because Edwards is pro se, the Court must liberally construe the Second Amended Complaint. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). But it need not re-write a the pleading to find any claims. *Peterson v. Atlanta Hous. Aut.*, 998 F.2d 904, 912 (11th Cir. 1993).

## DISCUSSION

Defendants seek to dismiss multiple counts of the Second Amended Complaint. The Court addresses their arguments in turn.

**A. Gonzalez's Motion**

Edwards alleges Gonzalez violated the Fourth Amendment by using excessive force. He sues him in his individual capacity. Gonzalez seeks to dismiss based on qualified immunity.

"Although the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (cleaned up). Generally, it is proper to grant a motion to dismiss on qualified immunity grounds when the "complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *see also Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *aff'd en banc* 764 F.2d 1400 (11th Cir. 1985). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *St. George*, 285 F.3d at 1337.

So the Court will entertain Gonzalez's qualified immunity argument. Central to Gonzalez's argument is the arrest report. Before examining the qualified immunity argument, the Court must address whether it is appropriate to consider the arrest report on the motion to dismiss.

In considering extraneous documents on a Rule 12(b)(6) motion to dismiss, the Eleventh Circuit has stated:

> [W]e "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss [under Rule 12(b)(6)]." *Fin. Sec. Assurance, Inc. v. Stepandhens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). "This [C]ourt recognizes an exception, however, in cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to [her] claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss. *Id.*

*Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695-96 (11th Cir. 2014) (alterations in original). Here, Edwards did not attach the arrest report to his pleading and none of the above exceptions apply. What is more, the contents of the arrest report differ from Edwards' account of the incident as alleged in his Second Amended Complaint. Indeed, Edwards asserts Defendants "made false written statements" by claiming that he was at fault, disobedient, and combative. (Doc. 92 at 14, ¶ 26). Consequently, the Court will not consider the arrest report in ruling on Gonzalez's Motion. *See, e.g.*, *Woodly v. San Miguel*, 567 F. App'x 719, 720 n.1 (11th Cir. 2014) (per curiam) ("Unlike the district court, we do not consider the events described in the police reports attached to [the officer's] motion to dismiss. Given what [the plaintiff] alleged, we cannot say that the events referenced in the reports—even if central to [the plaintiff]'s claim—are undisputed."); *Petithomme v. Cnty. of Miami-Dade*, 511 F. App'x 966, 969 n.2 (11th Cir. 2013) (per curiam) (on appellate review of an order denying a motion to dismiss based on qualified immunity stating, "[t]he Officers assert that Plaintiff became aggressive when producing the identification and that she yelled at [one of the officers]. We do not credit these

factual allegations because they are not alleged in the Complaint and the police report containing such statements was not attached as an exhibit to the Third Amended Complaint."); *Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("Where a civil rights plaintiff attaches a police report to his complaint and alleges that it is false . . . the contents of the report cannot be considered as true for purposes of ruling on a motion to dismiss.  Otherwise, officers sued under § 1983 could just attach police reports referenced in a civil rights complaint to their motions to dismiss and ask courts to consider the contents of those reports even if they contradicted the allegations of the complaint.").

Having determined the Court should not consider the arrest report, the Court turns to the merits of Gonzalez's qualified immunity argument.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).  An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority.  The burden then shifts to the plaintiff to show (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was

clearly established at the time of the alleged violation. *Snorton v. Owens*, 808 F. App'x 814, 820-21 (11th Cir. 2020).

Qualified immunity "does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff.]" *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (cleaned up).   In evaluating qualified immunity, the Court must consider (1) whether "the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated," and (2) "whether the right violated was 'clearly established'" at the time of the alleged conduct. *Pearson*, 555 U.S. at 232.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)).   "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 132 S. Ct. at 589 (internal quotations omitted).   To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id*.

The Eleventh Circuit has identified three ways a plaintiff can satisfy the "clearly established" requirement. "First, a plaintiff can show that a materially similar case has already been decided." *Waldron v. Spicher*, 954 F.3d 1297, 1304 (11th Cir. 2020). The case must be from the United States Supreme Court, the Eleventh Circuit, or the highest court of the forum state. *Id.* "Second, a plaintiff can also show that a broader, clearly established principle should control the novel facts of a particular case." *Id.* at 1305. The principle must be established with such obvious clarity that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Id.* (citation omitted). "Third, a plaintiff could show that the case fits within the exception of conduct which so obviously violates the Constitution that prior case law is unnecessary." *Id.* Against that backdrop, the Court turns to the excessive force claim.

"The Fourth Amendment's guarantee of freedom from unreasonable searches and seizures encompasses the right to be free from the use of excessive force in the course of an arrest, apprehension, or other seizure. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554

(1980).   "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (cleaned up).   "That standard asks whether the force applied is objectively reasonable in light of the facts confronting the officer, a determination we make from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight."  *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1353 (11th Cir. 2015) (cleaned up).  The Eleventh Circuit generally considers several factors to determine whether an officer's use of force was objectively reasonable: "(1) the need for application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted."  *Hadley*, 526 F.3d at 1329.

Edwards first argues Gonzalez was not acting within his discretionary capacity.  The Court disagrees.  "To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of the type that fell within the employee's job responsibilities."  *Burnett v. Unifed Gov. of Athens-Clarke Cnty., Ga.*, 395 F. App'x  567, 568 (11th Cir. 2010).   "The official responsibilities of a police officer on patrol include making traffic stops and arresting people who are suspected of committing traffic violations."  *Id.*  Edwards' excessive force claim arises from a traffic stop, which is one of Gonzalez's job responsibilities.

So the burden shifts to Edwards.  Accepting Edwards' allegations as true, as the Court must on a motion to dismiss, Edwards did not threaten the officers or attempt to resist or flee when they "seized" him.  Yet Gonzalez still kicked him, beat him, stepped on his foot, and tased him. This was a violation of his right to be free from excessive force.

The question becomes whether the right was clearly established.  To satisfy his burden, Edwards argues Gonzalez's conduct was so clearly unconstitutional that prior case law with similar facts is unnecessary.[3]  The Court agrees.  Even Gonzalez does not argue beating, kicking, and tasing a nonthreatening suspect was not clearly established at the time of the incident. What's more,  Eleventh Circuit precedent is clear enough that every reasonable officer would know such use of force to be excessive.  *See Hadley*, 526 at 1330 (finding excessive force where an officer punched a handcuffed suspect who was not resisting); *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (finding excessive force where an officer slammed the plaintiff's head into a car when the plaintiff was handcuffed, helpless, and posed neither a threat to the officer nor a flight risk); *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014) (finding that the "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force" under the Fourth Amendment);

---

[3] Edwards also cites to cases with similar facts from Courts of Appeals other than the Eleventh Circuit. But the law is clear the Court cannot consider those.

*Skelly v. Okaloosa Cnty. Bd. of Cnty. Com'rs*, 456 F. App'x 845, 848 (11th Cir. 2012) (finding that a gratuitous use of tasers on a handcuffed and complaint pretrial detainee constitutes excessive force); *Vinyard v. Wilson*, 311 F.3d 1340, 1348-49 (11th Cir. 2002) (officer not entitled to qualified immunity for forcibly grabbing and pepper-spraying already-handcuffed plaintiff who was arrested for a minor infraction).

According to the factual allegations, Edwards did not threaten the officers. He complied with their requests and simply asked to retrieve his cell phone. The right to be free from excessive force was clearly established. Any reasonable officer would know that it would be unconstitutional to use force against a person in Edwards' position. But based on his allegations, Gonzalez still beat, kicked, and tased him. It is thus inappropriate to dismiss the claims against Gonzalez based on qualified immunity at this stage.

**B. The City's Motion**

Edwards sues the City in both its individual and official capacity under 42 U.S.C. § 1983. Edwards' allegations against the City are:

> The actions of Defendant City of Fort Myers, by its policymaking decision, condoned acts of excessive force by its policy and customs and its failure to properly establish a policy in the use of force, including inadequate, investigation and punishments of its employees, as well as Defendants Sean Havenner and Arturo Gonzalez Jr., who exercised excessive violence in carrying out their duties. Plaintiff received serious physical and emotional injuries as a result of the Defendant's failure to properly establish a policy with regard to use of force, including a policy of biased investigations and refusal to discipline employees who use excessive force, which leaves employees free to commit excessive force

knowing that they will not be held accountable, this became the moving force behind their use of excessive force, in violation of Plaintiff's Furth (sic) and Fourteenth amendment.

(Doc. 92 at 17, ¶ 44).

The actions of Defendant City of Fort Myers in its retention of Defendants Havenner and Gonzalez with knowledge of Defendants [sic] history of excessive use of force constituted deliberate indifference to the Plaintiff's safety and contributed to and proximately caused the above-described, in violation of Plaintiff Fourth Amendment right to be free from the excessive use of force and battery.

(Doc. 92 at 17, ¶ 45).

Succinctly, Edwards claims the City is liable because it (1) condoned acts of excessive force through its policies and customs and (2) retained Havenner and Gonzalez despite knowledge of their history of using excessive force.

Municipalities and other local government entities are subject to liability under § 1983 and may be sued directly for relief where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality or other local governmental entity "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. at 691. Only if the alleged constitutional violations resulted from a custom, policy, or practice of a local government entity may that entity be held liable. *Id*. at 694.

A policy or custom "is established by showing a persistent and widespread practice and an entity's actual or constructive knowledge of such customs, though the custom need not receive formal approval." *German v. Broward Cnty. Sherriff's Office*, 315 F. App'x 773, 776 (11th Cir. 2009). For example, even where a municipality provides rules and regulations for operating its police department, if those rules are repeatedly violated and the municipality knows of the conduct but fails to remedy the situation then it may be liable. *Depew v. City of St. Mary's Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Edwards provides only a vague assertion that the City lacked a policy or custom to ensure police officers did not use excessive force. In support of this general allegation, Edwards offers no factual allegations other than his own incident. He fails to allege other uses of excessive force or other facts that would lead to a reasonable inference the City has a practice of failing to ensure its officers do not use excessive force. Considering this, Count XXVII must be dismissed without prejudice. *See Larosa v. City of Sweetwater*, No. 13-21585-Civ., 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (finding plaintiff failed to adequately allege facts to support the existence of an official policy or custom of the City).

Next, the Court looks at the negligent retention claim. Plaintiffs who bring Section 1983 claims such as excessive force together with claims of negligent hiring and retention often do so only under state law. *See Paul v.*

*Bradshaw*, No. 12-81381-CIV-ROSENBAUM/SELTZER, 2013 WL 12084298, at *8 (S.D. Fla. Aug. 7, 2013) (collecting cases). But Edwards' negligent retention claim imposing liability against the City is only under § 1983. He claims the City was deliberately indifferent to his constitutional right to be free from excessive force by retaining Officers Havenner and Gonzalez. He does not allege any incidents that the City was aware of and overlooked, nor does he allege how the City was deliberately indifferent.

Section 1983 does not allow for municipal liability based on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. Rather, as discussed, a municipality is only liable for an injury caused by an employee when a "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694. A case from the Southern District of Florida is instructive. In *Ashley v. City of Hialeah*, No. 11-20490-CIV, 2011 WL 3236051, the Southern District denied the City's motion to dismiss a negligent retention claim under § 1983. There, the plaintiff alleged the arresting officer committed six acts of professional misconduct and that the City's retention of him constituted an unofficial policy and custom of the City that led to a violation of the plaintiff's civil rights. 2011 WL 3236051, at * 4.

Edwards' allegations fall short of identifying a policy or custom. He provides no details to support an inference the City knew other specific

instances in which Havenner and Gonzalez used excessive force.  Nor does he claim the retention of these officers rises to the level of an official custom or policy condoning such behavior.  The negligent retention claim will be dismissed.

### C. Lee County's Motion

Edwards seeks relief against Lee County under 42 U.S.C. § 1983, alleging that Lee County, "by its policy making decision, condoned acts of excessive force by its policy and customs and its failure to properly establish a policy in the use of force." (Doc. 92 at 18, ¶ 46).  He also alleges Lee County's retention of Rhoton, Heuglin, and Monmany constituted deliberate indifference because of its knowledge of the officers' history of excessive force use. (Doc. 92 at 18, ¶ 47).  Lee County argues Edwards cannot attribute his injuries to it.

"A county is 'liable under section 1983 only for acts for which [the county] is actually responsible.'" *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citations omitted).  Counties may be held liable under § 1983 only for the execution of their own governmental policies or customs.  *Troupe v. Sarasota Cnty., Fla.*, No. 8:02-CV-53 T24MAP, 2004 WL 5572030, at * 11 (M.D. Fla. Jan. 22, 2004) (quoting *Monell*, 436 U.S. at 694).  A county can never be liable under § 1983 for the acts of those officials whom a county lacks the

authority to control.  *Id.* (quoting *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1292 (11th Cir. 1998)).

To determine whether Edwards states a claim against Lee County, the Court must determine whether Lee County, under Florida law, has control over the officers and the ability to hire and fire the officers.

Florida sheriffs are elected officials who exercise independent control over a host of matters, including the selection of personnel and the hiring, firing, and setting salaries of such personnel.  *See* Fla. Stat. § 30.53.  As for law enforcement, Florida sheriffs are "conservators of peace in their counties."  *See* Fla. Stat. § 30.15(1)(e).  This means that sheriffs in Florida act as agents for the state in enforcing the laws of the state.  Florida statutes do not prescribe law enforcement powers as one of the statutorily created powers of counties. Fla. Stat. § 125.01.  And under Florida law, sheriffs are the governmental entities responsible for the neglect and default of their deputies.  *See* Fla. Stat. § 30.07.

Lee County does not, and cannot, direct the Sheriff on what policies to adopt, how to operate his office, and how to hire, train, supervise, or discipline his deputies.  Count XIX and XX are dismissed.

## D. Diggs' Motion

Edwards sues Diggs in his individual capacity, alleging Diggs:

> [f]ailed to train, properly test and evaluate Defendants, Havenner and Gonzalez on the use of force and failed to establish and enforce policies related to the use of force and failed to properly investigate complaints filed against Defendants prior to the excessive use of force, constitutional violation in Plaintiff's case.

(Doc. 92 at 17, ¶ 48).   Edwards makes no specific allegations of personal involvement in using excessive force as to Diggs (the police chief).   Instead, Edwards sues him just because he holds a supervisory position.

Under some circumstances, failing to adequately train or supervise may give rise to a claim cognizable under § 1983.  *See City of Canton, Ohio v. Harris, 489 U.S. 378 (1989).*   But mere conclusory allegations of failure to train, supervise, or discipline subordinates to prevent constitutional torts, unless the supervisor knows of an offending incident or knowledge of a prior pattern of similar incidents, and circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.  *Cline v. Tolliver*, No. 09-22463-CIV, 2010 WL 661984, at *2 (S.D. Fla. Feb. 18, 2010).   The Eleventh Circuit has held that nothing less than showing gross negligence is needed to establish liability for inadequate training.  *Cannon v. Taylor*, 782 F.2d 947, 951 (11th Cir. 1986).

Edwards does not satisfy these requirements because he uses boilerplate language that shows no personal involvement by Diggs in the incident involving Edwards, Gonzalez, and Hannever.   And he alleges no facts that

show any gross negligence by Diggs led to any deprivation of constitutional rights.  The claim against Diggs is dismissed.

**E. Henderson's Motion**

Edwards names Henderson as a party but includes no allegations against him within the complaint.  He will be dismissed from the action.

Accordingly, it is now

**ORDERED:**

1. Defendant Arturo Gonzalez Jr.'s Motion to Dismiss (Doc. 118) is **DENIED**.

2. Defendants City of Fort Myers, Derrick Diggs, and Randy Henderson's Motion to Dismiss (Doc. 119) is **GRANTED**.  Counts XVI, XVII, and XXI are **DISMISSED** without prejudice, and the City of Fort Myers, Diggs, and Henderson are no longer defendants in this action.

3. Defendant Lee County's Motion to Dismiss (Doc. 132) is **GRANTED**. Counts XIX and XX are **DISMISSED** without prejudice, and Lee County is no longer a defendant in this action.

4. Defendant Mark Mallard's Motion to Dismiss (Doc. 125) is **TAKEN UNDER ADVISEMENT**.

a. Edwards may file a response to Mallard's motion on or before **May 17, 2021**. **Failure to timely respond will result in the Court treating the motion as unopposed.**

**DONE** and **ORDERED** in Fort Myers, Florida on April 26, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record