FILED

UNITED STATES DISTRICT COURT

for the

Middle District of Florida

2021 DEC 27 PM 2: 17

CLERK US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS FLORIDA

DERICK EDWARDS,

*Plaintiff(s)*

v.

Case No. 2:19-CV-711-FtM-38MRM

CITY OF FORT MYERS,
LEE COUNTY,
RANDY HENDERSON,
CARMINE MARCENO,
DERRICK DIGS,
SEAN HAVENNER,
GUILLERMO MONMANY,
JAMES HEUGLIN,
MARK MALLARD,
BRIAN RHOTON AND
ARTURO GONZALES,

*Defendant(s)*

## Declaration opposition to summary judgment motion

1. I am the plaintiff in the above-entitled case. I make this declaration in opposition to defendant's motion for summary judgment on my claims concerning the use of force against me by the defendants.

2. The defendant's claims, in summary, that 1. On October 7, 2015, the Plaintiff was stopped by members of the Lee County Sheriff's Office and the Fort Myers Police Department for a traffic violation on SR 82. (Ex. B, 23:55:17).

3. The Plaintiff exited his vehicle and was standing on the north of his vehicle speaking with officers while they conducted a K-9 open air sniff, exhibiting a positive alert. (Ex. B, 23:58:26).

4. The Plaintiff moved towards his vehicle rapidly with officers telling him to stop and yelling his name. (Ex. B, 00:00:12).

5. Officers Monmany, Haveneur, Heughlin, Mallard, and Roton pursued the Plaintiff and took him to the ground at his driver's door where he was tased.  (Ex. B, 00:00:16).

6. Sgt. Gonzalez can be seen coming back into the video (Ex. B, 00:00:20), where he stands by his taser out until the other officers restrain the Plaintiff.  (Ex. B, 00:1:07).

7. Sgt. Gonzalez can be seen removing the prongs from the taser from the Plaintiff's body as part of the use of force report.  (Ex. B, 00:8:42).

8. EMS arrived on scene and transported the Plaintiff to the hospital.  (Ex. B, 00:13:17).

9. The defendants are not entitled to summary judgment because there are genuine issues of material facts to be resolved.  These issues are identified in the accompanying Statement of Disputed Factual Issues.

The facts are set out in this declaration.

On October 7, 2015 Defendants Havenner, Monmany, and Rhoton and Plaintiff were at the Racetrack Gas Station (racetrack), at 5250 SR 82, in Fort Myers, Lee County, FL.

At the racetrack gas station, Defendants Havenner, Monmany, and Rhoton recognized Plaintiff from a prior arrest for fleeing to allude.  Wherein Plaintiff proceeded to trial and was found not guilty.  Plaintiff contends that arrest and other "seized" by the police use of force is almost always analyzed under the Fourth Amendment "reasonableness" standard, which governs "all claims that law enforcement officers have used excessive force deadly or not in the course of an arrest, investigatory stop, or other seizure of a free citizen." *See Graham v. Connor,* 490 U.S. 386, 395, 109 S. Ct. 1865 (1989); *Parker v. Gerrish,* 547 F. 3d 1, 11 (1st Cir. 2008) (Fourth Amendment analysis of tasering incident); *U.S. v. Schtzle,* 901 F. 2d 254 (2d Cir. 1990).

Plaintiff contends that defendants are not entitled to summary judgment because the question for this Court is whether the officers actions are objectively reasonable in light of the

facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham,* at 397.

The defendants saw Plaintiff in the racetrack gas station and waited for Plaintiff to come out because they knew Plaintiff. That's the only reason they pulled Plaintiff over and Gonzalez was the controlling officer and Plaintiff thought Gonzalez tazered him because when Plaintiff was lying on the ground in handcuffs he yanked the tasers hooks out of Plaintiff chest and that's for the doctor to do and not officers. So defendants clearly targeted Plaintiff for an unlawful police stop.

At that time, Plaintiff had not violated any ordinance or law, however the defendants, Havenner, Monmany, and Rhoton followed Plaintiff from the racetrack gas station. A deliberate illegal act.

Soon thereafter, on October 7, 2015, Plaintiff was the subject of an investigatory stop conducted by Defendants Havenner, Monmany, and Rhoton of the Fort Myers Police department, and Lee County Sheriff's Office (Joint Task Force), with guns drawn.

Defendants Havenner, Monmany, and Rhoton activated their emergency lights and siren. Plaintiff pulled his vehicle to the side of the road, turned off his engine and waited for instruction from Defendants.

During the traffic stop, the Defendants Havenner, Monmany, and Rhoton, got out of their cars and ran to Plaintiff's vehicle with guns drawn, ordering Plaintiff to exit the vehicle. An officer (it is unclear which one) stated, "Let's see your fucking hands!" Plaintiff raised his hands, which were empty. Another officer opened the driver's side door and shouted racial epithets, including during the tasing. The same Defendant stated, "Give me a reason!" At the same time Defendants Havenner, Monmany, and Rhoton yelled for Plaintiff to get out his driver

license and registration.

Plaintiff retrieved his driver license and registration and gave them to Defendant Monmany.

Defendants Gonzalez, Heuglin, and Mallard arrived on the scene.

After Plaintiff exited the vehicle, he asked the Defendants what did he do. Defendant Monmany responded we are just going to run your name, check your driver's license to make sure there are valid and if everything came back good and you do not have any warrants, eh was just going to allow Plaintiff to leave with a warning.

After determining Plaintiff had no warrants. Defendants started question Plaintiff regarding whether Plaintiff had any drugs on him or in his car. Plaintiff responded no.

Defendants called for a K-9 unit (drug dog) to sniff for drugs. The drug dog inspected Plaintiff and Plaintiff's vehicle however, no drugs were found.

Plaintiff requested to retrieve his cell phone from the vehicle. Defendant Mallard gave Plaintiff permission to retrieve his cell phone. As the Plaintiff turned to walk back to his vehicle, without provocation, Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, immediately deployed mutable tasers and tased plaintiff in rapid succession, administering an electric shock to Plaintiff. Plaintiff was tased in his chest, stomach, arm and should, multiple times, causing Plaintiff to scream and writhe in pain.

The taser shock brought Plaintiff to his knees and Defendants Havenner, Monmany, Gonzalez, kicked Plaintiff in the back and brought Plaintiff to the ground. Plaintiff was on the ground after the first tase, he never got back up, and he never hit, kicked, punched, or threatened the officers. Defendants handcuffed Plaintiff, turned Plaintiff on his stomach. Although, Plaintiff was not resisting, after the first shock ended, and after he was on the ground,

handcuffed, Defendant Monmany applied a contact tase to Plaintiff's back, grinding the taser, while verbally using racial slurs. Defendant Gonzalez pulled the prongs out of Plaintiff's body by rapping the cord around his hand and yanking them from Plaintiff body. Other Defendants (unknown) continued to shock Plaintiff, and after no fewer than eight shocks, he was lying flat and did not get up.

Once on the ground, after the tasing, Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, severely and brutally started kicking and beating the Plaintiff in and about his head, body, and extremities as to cause grievous bodily harm and permanent injury. Defendant Rhoton continued to step on Plaintiff's hand throughout the beating. Defendant Gonzalez continued to step on Plaintiff's right foot throughout the beating.

Defendant, Mallard, stood by while the Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, used excessive force on the Plaintiff and failed to render assistance to the Plaintiff and/or attempt to stop the actions being taken by the Defendants.

Arguendo, even if accepted that the initial use of the taser may have been justified, there was no justification for further taser shocks under the circumstances and the beating; namely, that Plaintiff was not accused of a crime or threatened with arrest or apprehension, posed no immediate threat or danger to the officers and was largely compliant and cooperative when the force was deployed.

The Plaintiff was not resisting and was attempting to comply with commands; thus, Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, repeated firing of their tasers, which caused Plaintiff's injury, was wholly unnecessary, and grossly disproportionate to the circumstances. Clearly, these Defendants use of a taser beyond the Plaintiff's complete physical capitulation repeatedly in a short period, where Plaintiff was cooperative and made no attempt to

flee was excessive.   Therefore, Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, decision to tase Plaintiff was therefore unreasonable.

The force employed by Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, was so utterly disproportionate to the level of force reasonably necessary that any reasonable officer would have recognized that his actions were unlawful.  Plaintiff was pulled over for an allege improper right hand turn, therefore the severity of the crime at issue did not warrant removing Plaintiff from the vehicle with guns drawn.  Plaintiff poses no immediate threat to the safety of the officers or others, and he was not actively resisting arrest or attempting to evade arrest by flight.

The incident was recorded on the Defendants Havenner, Monmany, Gonzalez, Heuglin, Mallard, and/or Rhoton body camera.  Additionally, a dash came video in the officers' patrol vehicle recorded the incident.  The Defendants' Havenner, Monmany, and Rhoton reports are blatantly contradicted by the record of the video recording the incident.

The video recording conclusively shows that Plaintiff hands were empty and he offered no resistance before or during the Defendants, use of tasers.  Plaintiff was instead voicing his desire to comply with the Defendant's commands, provided he was not given a chance to do so, violated Plaintiff's Fourth Amendment right to be free from the excessive use of force.

On the video recording, Defendant Havenner, Monmany, Gonzalez, Heuglin, and Rhoton, is seen deploying their tasers in rapid succession, administering an electric shock to Plaintiff, and severely and brutally kicking and beating the Plaintiff in and about his head, body, and extremities as to cause grievous bodily harm and permanent injury.  Although, Plaintiff was not resisting, posing no immediate threat to the safety of the officers or others, and he was not actively resisting arrest or attempting to evade arrest by flight.   The force used by the

Defendant's in carrying out the arrest was wholly unnecessary and was not reasonably proportionate to the need for that force. The nature and extent of Plaintiff's injuries clearly shows the officer's force was excessive.

Plaintiff suffered physical injuries, including bleeding from the taser probes, and psychological injuries, including possible Post-Traumatic Stress Disorder, from his encounter with Defendants Havenner, Monmany, Gonzalez, Heuglin, and Rhoton.

Plaintiff was transported to Gulf Coast Medical Center, (Gulf Coast Emergency Department) for treatment for the injuries to his arms, shoulder, stomach and back, including, suffering bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, incurred medical expenses in the treatment of his injuries, and suffered physical handicap or alternatively suffered an aggravation of a previously existing condition. These losses are either permanent or continue in nature and Plaintiff, will suffer like losses or impairments in the future.

Contrary to the defendants' material fact, during these events I did not resist or threaten the officers in any fashion. Rather, I lay on the floor and tried to protect my face from the defendants' blows and kicks.

The foregoing factual allegations create a genuine issue of material fact and will, if proved at trial, support a judgment in my favor, as explained in this declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DERICK EDWARDS,

        Plaintiff,

v.                                 Case No: 2:19-cv-711-SPC-NPM

CITY OF FORT MYERS,
LEE COUNTY
RANDY HENDERSON,
CARMINE MARCENO,
DERRICK DIGS,
SEAN HAVENNER,
GUILLERMO MONMANY
JAMES HEUGLIN,
MARK MALLARD,
BRIAN RHOTON AND
ARTURO GONZALES,

        Defendants.

_____ /

**Affidavit of Derick Edwards**

State of Florida

County of Lee

        I, Derick Edwards, being first duly sworn, deposes as follows:

        1. The stop by the Defendants of Plaintiff's vehicle on October 7, 2015 was a plan

malicious act to stop frisk and harass Plaintiff.

        2. During this unlawful and illegal traffic stop. Defendant's sole purpose was to harass

Plaintiff.

        3. Upon information and belief, it appeared that Defendant's all knew Plaintiff from a

previous case, and their sole purpose was to inflict bodily harm upon him. There is some

facts in dispute. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,250 (1956).

4. Plaintiff contends that summary judgment is not warranted because this Court must ask himself whether a fair minded jury could returna verdict for the Plaintiff on the evidence presented. *Burger King Corp. v. Weaver,* 169 F. 3d 1319, 1321 (11th Cir. 1999).

5. Plaintiff was illegally stop there is no evidence that he made any illegal turn. The fact that law enforcement lied on about a traffic violation is an essential element of an illegal stop. *See Celotex Com v. Catrett,* 477 U.S. 317, 323 (1956).

6. Plaintiff contends that Defendant's attempt to make this case about their fears of Plaintiff fleeing is simply to muddy the waters. Defendant's violated Plaintiff's civil rights by knowingly and intentionally causing an illegal traffic stop to cause retalitory harm upon Plaintiff for a pass encounter in which defendant's felt slighted.

7. Plaintiff contends that the evidence in this case show clearly that Defendant is not entitled to qualified immunity because their actions were deliberate and done with a malicious intent and knowingly and intentionally violated the law. *See Harlow v. Fitzgerald,* 475 U.S. 800, 818 (1987); *see also Malley v. Briggs,* 475 U.S. 335, 341 (1986).

## CERTIFICATION AND OATH

UNDER THE PENALTIES OF PERJURY I CERTIFY, that I have read the foregoing motion and the facts stated in it are true and correct;

Respectfully Submitted,

**STATE OF FLORIDA**
**COUNTY OF ~~LEE~~** ORANGE

**Sworn to or affirmed and signed before me on this** _22_ **day of** _Dec_ 2021

___ Produced Identification

Type of Identification Produced was _____ FL ID CARD _____.

_____
Sign of Notary Public State of Florida

Antoinette Davis

Print, Type, or Stamp Commissioned
Name of Notary Public

ANTOINETTE M DAVIS
State of Florida-Notary Public
Commission # GG 184554
My Commission Expires
June 03, 2022

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 22, 2021, a true and correct copy of the above and foregoing was served upon the persons named in the Service List via the U.S. Mail, via Certified Mail/Return Receipt Requested to:

Via Certified Mail/Return Requested

Timothy P. Culhane, Esq
DURANDT, ADAMSKI, FEICHTHALER, & SANCHEZ, P.L.
1714 CAPE CORAL PARKWAY EAST
CAPE CORAL, FL 33904

Via Certified Mail/Return Requested

Kyle Dudek, Esq
HENDERSON, FRANKLIN, STARNES & HOLT, P.A.
1715 MONORE STREET
FORT MYERS, FLORIDA 33904

Derick Edwards, Pro Se Plaintiff
6286 Demery Circle
Ft Myers, Fl 33916