UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DERICK EDWARDS,

    Plaintiff,

v.                                         Case No.: 2:19-cv-711-SPC-NPM

GUILLERMO MONMANY,
JAMES HEUGLIN, BRIAN
RHOTON, ARTURO GONZALEZ,
JR. and CARMINE MARCENO,

    Defendants.
_____/

# OPINION AND ORDER[1]

Before the Court is Defendant Arturo Gonzalez's Motion for Summary Judgment (Doc. 178). Plaintiff Derick Edwards responded in opposition. (Doc. 183). Gonzalez did not reply. The Court grants the Motion.

## BACKGROUND

This is an excessive force case. Almost the entire encounter was recorded by dash and body cameras. Gonzalez and another officer (Sean Havenner)

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

wore the body cams. While a bit unclear, it seems the dash cam was on Gonzalez's car.

At about midnight, police stopped a car. But it did not pull over to the side of the road. Instead, the car parked in a traffic lane, jutting into the intersection. Just after stopping, the driver opened and closed the door. Yet nobody got out. So officers approached the driver—Edwards.

At first, the encounter was uneventful. Officers asked Edwards about his car (a rental) and why he was in the area. When Edwards asked why they pulled him over, an officer explained he made a wide right turn out of a nearby gas station. The officer said Edwards turned into the far-left lane rather than the one nearest the curb.[2] But the officer clarified he would let Edwards off with a written warning if his license checked out. Before doing so, he asked if other officers could search the car during the license check. Edwards declined. Still, the officer asked Edwards to step out of the car while he did the paperwork.

After getting out, Edwards asked if he could get his phone. Officers let him walk to the car and retrieve it. Then, Edwards moved a few feet away from the car, smoked a cigarette, spoke to some officers, and recorded them on his phone. During the license check, a police dog conducted an open-air search

---

[2] This turn would violate Florida Statute 316.151(1)(a). It is a noncriminal traffic infraction.

2

around the car. According to her handler, the dog alerted. Given that, officers planned to search the car. About twenty seconds later, Edwards started towards the car. As he approached it, officers shouted: "What are you doing? Derick, Derick!" And they closed in. Edwards quickly opened the door and reached into the car. At that point, four officers swarmed him.

When officers tried to restrain Edwards, a struggle ensued. That's what this case is about.

Amid the scuffle, officers deployed tasers. One used his knee to hit Edwards' head twice. After, Edwards grabbed something off the ground. So the same officer stomped on Edwards' hand three times before he dropped the object. Eventually, officers handcuffed Edwards and pulled him away from the car. The entire incident (from when Edwards started towards the car to when he was cuffed and pulled away from the vehicle) took about one minute and twenty-three seconds. For about forty seconds, Gonzalez was standing nearby watching the scrum. But he never touched Edwards during the incident.

Edwards sued. The Motion only concerns the claims against Gonzalez: Count 2 (42 U.S.C. § 1983 excessive force), Count 7 (state-law battery), and Count 12 (state-law intentional infliction of emotional distress ("IIED")).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

3

to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Beard v. Banks*, 548 U.S. 521, 529 (2006).

At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). But when clear video "obviously contradicts the nonmovant's version of the facts," courts "accept the video's depiction." *Shaw v. City of Selma*, 884 F.3d 1093 (11th Cir. 2018) (cleaned up). Those facts are taken "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## DISCUSSION

On the briefing alone, the resolution is simple. In Counts 2, 7, and 12, Edwards alleges Gonzalez used "excessive force, by repeatedly firing his taser . . . repeatedly shocking [Edwards,] and physically beating [him] without justification. (Doc. 92 at 11-13). The videos clarify Gonzalez did none of those

4

things. He neither used a taser nor beat Edwards. Confusingly, Edwards conceded this at his deposition. (Doc. 185 at 15, 17-19). The excessive force, battery, and IIED claims may stand against the other officers—an issue on which the Court expresses no opinion right now. But as to Gonzalez, the claims alleged must fail.

"Because the claims are premised on excessive force at the time of seizure and arrest, the Fourth Amendment, not the Fourteenth Amendment, applies." *C.P. by and through Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1092 (M.D. Fla. 2015); *see also Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 952-53 (11th Cir. 2019). To decide whether the force used was excessive, "a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Manners v. Cannella*, 891 F.3d 959, 973 (11th Cir. 2018) (citation omitted). Various factors help a court make that decision. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1321-22 (11th Cir. 2017).

While other officers tussled with and handcuffed Edwards, Gonzalez applied no force. Nor did he threaten Edwards. In fact, Gonzalez did little of anything: simply standing near the scuffle touching no one. Crucially, it is Gonzalez's conduct—not another officers—that matters. *See, e.g.*, *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) (stating "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions"); *Mathews v. Wetherbee*, 839 F. App'x 395, 396 (11th Cir. 2020).

5

But there is no indication (or even argument) for how Gonzalez could be liable for excessive force without applying any force. And the Court concludes Gonzalez's conduct was not excessive force. Even leaving that aside, liability for Gonzalez would not be clearly established. So qualified immunity would apply. See *Crocker v. Beatty*, 995 F.3d 1232, 1264 n.6 (11th Cir. 2021) (Martin, J., concurring in part) ("But, of course, the application of de minimis force (or, as in the majority's example, no force) cannot support a claim for excessive force."); *Alexandre v. Ortiz*, 789 F. App'x 169, 175 (11th Cir. 2019) ("[A]pplication of de minimis force, without more, will not support an excessive force claim and will not defeat an officer's qualified immunity" (cleaned up)).

If Edwards contends Gonzalez used excessive force by pulling off the taser probes, the answer is the same. Again, the video betrays Edwards' allegations. After officers cuffed him, they pulled Edwards away from the car and sat him on the ground. Then, they waited for EMTs. While waiting, some officers searched the car. Others (including Gonzalez) chatted with Edwards and among themselves. During this time, Gonzalez took photos of Edwards. He also pulled the taser probes off the front of Edwards' shirt. On these facts, the Court cannot say Gonzalez used excessive force.

Even if removing the probes hurt Edwards, nothing suggests this minimal force was objectively unreasonable. Someone needed to detach the probes. Edwards' qualm seems to be Gonzalez removed them without awaiting

6

EMTs. Yet there is no argument the result would have been any different if EMTs pulled off the probes. Nor does Edwards suggest he suffered any injury from Gonzalez's conduct. In short, the force was not excessive. And if it were, no clearly established precedent said so. Gonzalez, thus, would get qualified immunity regardless. *See generally Corbitt v. Vickers*, 929 F.3d 1304, 1311-21 (11th Cir. 2019) (explaining qualified immunity in detail and holding it applied to excessive-force claim against officer who accidentally shot a child).

That analysis concerns excessive force (Count 2). But it applies all the same to battery (Count 7). An officer can be liable for battery "where the force used is 'clearly excessive.'" *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)). As above, the Court cannot conclude Gonzalez's nonuse of force was clearly excessive. *See Johnson v. City of Miami Beach*, 18 F.4th 1267, 1275 (11th Cir. 2021) ("Florida courts analyze whether the amount of force used was reasonable under the circumstances.").

The claim for IIED (Count 12) is different. But the outcome is not. To prove IIED, plaintiff must show: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). Again, Edwards did not

establish Gonzalez's conduct was outrageous. Nor does Edwards offer anything to support severe emotional distress.

So the Court must dismiss Counts 2, 7, and 12. Those are the only claims Edwards alleged against Gonzalez.

With the motion decided, the Court clarifies the remaining claims and parties. The surviving claims follow: Counts 3, 4, 5, 8, 9, 10, 13, 14, 15, 22, 24, and 25. Nothing else survived to this point. And the only parties Edwards still has claims against are Defendants Brian Rhoton, James Heuglin, Guillermo Monmany, and Carmine Marceno. All other parties were already dismissed. The case proceeds on the identified claims. And to be clear, nothing in this Order should be construed as passing any judgment on the remaining claims.

Accordingly, it is now

**ORDERED:**

1. Defendant Arturo Gonzalez's Motion for Summary Judgment (Doc. 178) is **GRANTED**.

2. Counts 2, 7, and 12 are **DISMISSED with prejudice**.

3. The Clerk is **DIRECTED** to **TERMINATE** Gonzalez from the docket.

4. The case is **ONGOING** as to Counts 3, 4, 5, 8, 9, 10, 13, 14, 15, 22, 24, and 25 from the Second Amended Complaint (Doc. 92).

**DONE** and **ORDERED** in Fort Myers, Florida on January 18, 2022.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record