UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DERICK EDWARDS,

     Plaintiff,

v.                                 Case No.:  2:19-cv-711-SPC-NPM

GUILLERMO MONMANY,
JAMES HEUGLIN, BRIAN
RHOTON and CARMINE
MARCENO,

     Defendants.

_____/

## OPINION AND ORDER[1]

Before the Court are Defendants Guillermo Monmany's, James Heuglin's, Brian Rhoton's, and Carmine Marceno's Motion for Summary Judgment. (Doc. 212). Pro se Plaintiff Derick Edwards has responded in opposition and Defendants have replied. (Doc. 216; Doc. 217). The motion for summary judgment is thus ripe for review. Edwards has also filed an untimely motion for additional discovery. (Doc. 218).

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND[2]

This is an excessive force case. Almost the entire encounter was recorded by dash and body cameras.[3] At about midnight, police stopped a car for making a wide right turn. Edwards was the driver. At first, the encounter was uneventful. Officers asked Edwards about his car (a rental) and why he was in the area. When Edwards asked why they pulled him over, an officer explained he made a wide right turn out of a nearby gas station. The officer said Edwards turned into the far-left lane rather than the one nearest the curb.[4] But the officer clarified he would let Edwards off with a written warning if his license checked out. The officer asked Edwards if other officers could search his car during the license check. Edwards declined, but he stepped out of his car while the officer did the paperwork.

After Edwards got out of the car, officers patted him down close to the car. With permission and while being supervised at arm's length by four officers, Edwards returned to his car to retrieve his cell phone. After getting his device, Edwards moved away from the car, smoked a cigarette, spoke to

---

[2] Because the Court writes only for the parties (who are familiar with the facts), it includes only those necessary to explain the decision. The Court draws these facts from the parties' papers and the record, much of which is undisputed.

[3] *Gomez v. Lister*, No. 22-10808, 2022 WL 16776248, at *1 (11th Cir. Nov. 8, 2022) (stating courts "accept facts clearly depicted in a video recording even if there would otherwise be a genuine issue about the existence of those facts") (internal quotations and citations omitted).

[4] This turn would violate Florida Statute 316.151(1)(a). It is a noncriminal traffic infraction.

some officers, and recorded them on his phone.  Then during the license check, a police dog conducted an open-air search around the car.  Because the police dog alerted to something in the car, officers planned to search it.  Here's where things went sideways.

About twenty seconds later after the police dog alerted, Edwards started towards the car.  According to Edwards, officers permitted him to retrieve his wallet inside.  The officers say otherwise.  Regardless, when Edwards approached the car, the officers started towards him and shouted: "What are you doing?  Derick, Derick!"  Edwards' pace accelerated, he quickly opened the car door, and reached into the car.  At that point, four officers swarmed him, and a struggle ensued.

Amid the scuffle, at least one officer deployed a taser.  One used his knee to hit Edwards twice—once in the head and once in the upper back—while Edwards' left hand and arm were in the car.  After Edwards' left hand and arm were out of the car and behind his back, Edwards still had his right arm stretched out in front of him with an object in his right hand.  So the same officer that struck Edwards in the head and upper back stomped on Edwards' right hand three times until Edwards dropped the object.  Officers then handcuffed Edwards behind his back and pulled him away from the car.  The entire incident (from when Edwards started towards the car to when he was

cuffed and pulled away from the vehicle) took about one minute and twenty-three seconds.

This incident forms the basis of Edwards' civil rights lawsuit. All that remains of this action are Edwards' claims against four defendants: Brian Rhoton, James Heuglin, Guillermo Monmany, and Carmine Marceno. The surviving claims are excessive force (Counts 3, 4, 5), battery (Counts 8, 9, 10), intentional infliction of emotional distress (Counts 13, 14, 15), a *Monell* claim[5] against the Sheriff (Count 22), and malicious prosecution (Counts 24, 25). Defendants all move for summary judgment on those claims, which Edwards opposes.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[5] *Monell* and its progeny establish when local governments may be sued under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

The moving party bears the initial burden to show a lack of genuinely disputed material fact. *Clark v. Coats & Clark,* 929 F.2d 604, 608 (11th Cir. 1991). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Id.* At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida,* 285 F.3d 1339, 1341-42 (11th Cir. 2002). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## DISCUSSION

### A. Edwards' Additional Request for Discovery

Before turning to the substance of Defendants' Motion for Summary Judgment (Doc. 212), the Court must first deny Edwards' motion for more discovery for several reasons. (Doc. 218). To start, Edwards seeks third party video footage from the gas station he pulled out of before his traffic stop. But nothing indicates Defendants have this discovery, and Edwards never properly sought it from the third party. It's also unclear how such footage relates to Edwards' claims before the Court – Edwards' claims center on the alleged excessive force at the traffic stop and resulting arrest, not the validity of the original stop. So Edwards hasn't shown why the additional discovery is even

relevant.  What's more, Edwards claims to want an additional body camera footage from an officer.  Defendants argue, however, that Edwards has been given all the video footage from that night.

Edwards' motion also has procedural deficiencies.  First, his request fails to include a Local Rule 3.01(g) Certification on his conferral with the opposing party before filing.  The Court has warned Edwards before about the requirement.  (Doc. 208; Doc. 211).  So the Court could deny Edwards' motion on this procedural ground alone.

Second, Edwards has not shown good cause to extend the discovery deadline.  In asking for more discovery, Edwards really seeks to modify the discovery deadline in the scheduling order.  But to do so, Edwards must show good cause and have the Court's consent.  Fed. R. Civ. P. 16(b)(4).  To establish good cause, Edwards must show the schedule could not be met despite his diligence.  *See Rowell v. Metro. Life Ins. Co.*, 579 F. App'x 805, 806–07 (11th Cir. 2014).  Although a court may extend the discovery deadline, it is under no obligation to do so.  *Id.*; *see also* M.D. Fla. Handbook on Civil Discovery § I.F. (parties "should not expect the Court to resolve discovery disputes arising after the discovery completion date."); *cf. McNeil v. United States*, 508 U.S. 106, 113 (1993) (pro se litigants must still comply with procedural rules applicable to ordinary civil litigation).

Here, the deadline for discovery and motions to compel discovery was July 1, 2022. (Doc. 163 at 1). The motion offers no explanation on why he could not meet that deadline despite his diligence. Although Defendant is currently incarcerated, that has not always been the case. At this point, Defendants' Motion for Summary Judgment (Doc. 212) is fully briefed (Doc. 216; Doc. 217), and the parties are on the verge of trial (Doc. 163). This case will soon hit the four-year mark and the underlying incident occurred over seven years ago. Any further delays in the scheduling order cuts against a just resolution of this action.

The Court thus denies Edwards' Additional Request for Discovery (Doc. 218) and turns to Defendants' summary judgment quest.

### B. Battery and Excessive Force (Counts 3, 4, 5, 8, 9, 10)

Edwards accuses Defendants of excessive force (Counts 3, 4, and 5) and battery (Counts 8, 9, and 10) because they tased and physically beat him when he went back to his car during the traffic stop. The use of excessive force during an investigatory stop or arrest violates the Fourth Amendment. *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1320 (11th Cir. 2017). To decide whether force was excessive, "a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Manners v. Cannella*, 891 F.3d 959, 973 (11th Cir. 2018) (citation omitted).

In reviewing the use of force, courts balance the nature and quality of the intrusion on the individual against the government justification for using force. *Richmond v. Badia,* 47 F.4th 1172, 1182 (11th Cir. 2022). Courts consider several factors including whether the suspect posed an immediate threat to the safety of the officers or others, the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted. *Id.* And courts must account "for the fact that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Jean-Baptiste v. Gutierrez,* 627 F.3d 816, 820 (11th Cir. 2010) (cleaned up).

There is no genuine issue of material fact concerning the force used in this case and the circumstances. The entire incident is captured on video. Taking the evidence in the light most favorable to Edwards, he had permission from an officer to go back to his car to get his wallet. But it's clear that, as Edwards walked to his car, permission was rescinded. Officers shout at Edwards, asking him what he's doing and calling his name with increasing panic. Edwards doesn't stop moving towards the car at the officers' cries. Instead, Edwards accelerates, flings open the door, and reaches into the car. This situation leads to a reasonable fear that Edwards is attempting to get something from his car he should not have. In terms of officers' safety, at best

Edwards seeks to destroy evidence of a crime; at worst, he's grabbing a deadly weapon. Once Edwards has reached and accessed his car in that way, he poses an immediate threat to the officers' safety, and they have legal justification for some application of force.

Turning to the force, while Edwards reaches into the car with his left arm and could be accessing a weapon, he is tased and an officer strikes him twice with his knee in Edwards' upper back and head. This use of force enables the officers to pull Edwards' left arm out of the car and handcuff it behind his back. During this scuffle, Edwards admitted in his deposition he pulled a taser cartridge out and did not immediately remove his left arm from the car. The threat to the officers' safety from Edwards' reaching into his car and resisting legally justifies this level of force. *Compare Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347 (11th Cir. 2015) (finding no constitutional violation where dangerous suspect refused to surrender his hands to be cuffed despite the application of escalating force and repeated use of a taser) *with Johnson v. City of Miami Beach*, 18 F.4th 1267, 1272 (11th Cir. 2021) ("[A] police officer violates the Fourth Amendment if he uses gratuitous force against a suspect who is secure, not resisting, and not a safety threat to the officer or other officers…") (cleaned up).

The same is true of the officer stomping on Edwards' right hand three times—this occurred when Edwards right arm was stretched out and he was

holding an object in his right hand that officers are telling him to drop. *See Mobley*, 783 F.3d at 1356 ("[T]he point at which a suspect is handcuffed and poses no risk of danger to the officer often is the pivotal point for excessive-force claims. We have held a number of times that severe force applied after the suspect is safely in custody is excessive.") (cleaned up). The force used causes Edwards to drop the object and the officers can finally bring his right arm behind his back and handcuff him. Once Edwards is handcuffed and the threat to officers' safety ceases, so does the force.

Finally, it's unclear the extent of any injury to Edwards. In his deposition, Edwards says he was treated following the incident at the hospital but he's not sure for what. He has memory issues, neck pain, headaches, occasionally blacks out, can't sleep, and has nerve damage in his back and problems with his kidneys. Edwards also discussed mental problems associated with the incident during his deposition. It's unclear if these conditions preexisted the incident or how they relate to it. Defendants claim at least some of the mental health conditions were preexisting and Edwards does not deny this. Even assuming these medical issues stem from the incident, officers used force only to restrain Edwards for their own safety and then immediately stopped. So it is not excessive and Defendants' must prevail.

This analysis concerns excessive force, but the same analysis applies to battery. An officer can be liable for battery "where the force used is 'clearly

excessive.'" *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996)).   The undisputed facts show the force was reasonable under the circumstances and so not excessive, much less clearly excessive.   *See Johnson v. City of Miami Beach*, 18 F.4th 1267, 1275 (11th Cir. 2021) ("Florida courts analyze whether the amount of force used was reasonable under the circumstances.").

### C. Intentional Infliction of Emotional Distress (Counts 13, 14, 15)

Edwards also brings claims against Defendants for Intentional Infliction of Emotional Distress ("IIED") (Counts 13, 14, 15).   To prove IIED, a plaintiff must show: "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."   *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015).   Because the Court finds the officers' conduct was reasonable given the circumstances, it was not outrageous.   Thus, Edwards cannot show IIED.

### D. Malicious Prosecution (Counts 24, 25)

Edwards brings malicious prosecution claims against Monmany and Rhoton (Counts 24, 25).   Malicious prosecution violates the Fourth Amendment.   *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020).   But it differs from claiming false arrest.   *Id.* at 1158.   A claim of false arrest

concerns seizures without legal process, such as warrantless arrests. *Id.* These claims accrue when either the seizure ends, or the plaintiff is held pursuant to legal process. *Id.* Malicious prosecution, in contrast, requires a seizure pursuant to legal process. *Id.*

To prove malicious prosecution, Edwards must show Defendants violated his Fourth Amendment right to be free from seizures pursuant to legal process and that criminal proceedings against him terminated favorably. *Luke v. Gulley,* 50 F.4th 90, 95 (11th Cir. 2022). The first element requires proof that "the legal process justifying [Edwards'] seizure was constitutionally infirm" and "his seizure would not otherwise be justified without legal process." *Williams,* 965 F.3d at 1165.

Edwards was arrested without a warrant. The only time Edwards was even arguably seized through a legal process was when the criminal court determined probable cause for Edwards' charges—obstructing officers and resisting officers—following his arrest. But according to the record the court released Edwards and Edwards presents no evidence he was held in custody through this or any other legal process. *See Brienza v. City of Peachtree City, Georgia,* No. 21-12290, 2022 WL 3841095, at *8 (11th Cir. Aug. 30, 2022) ("Normal conditions of pretrial release do not constitute a continuing seizure barring some significant, ongoing deprivation of liberty…") (cleaned up). So Edwards cannot establish a seizure based on legal process and his malicious

prosecution claims must fail.  Further, the criminal court's determination of probable cause was not constitutionally infirm.  The arrest report accurately details the incident supporting Edwards' charges as depicted in the video.

### E. *Monell* Claim (Count 22)

Edwards accuses Marceno, the Lee County Sheriff, of: (1) failing to train, properly test, and evaluate Defendants on use of force; (2) failing to establish and enforce policies related to use of force; and (3) failing to properly investigate past complaints against Defendants (Count 22).  To impose such *Monell* liability on a municipality, Edwards must show his constitutional rights were violated; the municipality had a custom, policy, or practice that constituted deliberate indifference to that constitutional right; and that policy, practice, or custom caused the violation.  *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1326 (S.D. Fla. 2018); see also *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

Edwards cannot show his constitutional rights were violated.  What's more, Edwards presents no evidence of any Lee County custom, policy, or practice.  So this claim must be dismissed.

In sum, the Court grants Defendants' Motion for Final Summary Judgement (Doc. 212).  Considering the evidence in the light most favorable to Edwards, he cannot prevail on his claims.

Accordingly, it is now **ORDERED:**

1. Plaintiff's Request for Additional Discovery (Doc. 218) is **DENIED**.

2. Defendants' Motion for Final Summary Judgment (Doc. 212) is **GRANTED**.

3. The Clerk is **DIRECTED** to enter judgment, deny any pending motions, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on January 10, 2023.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:       All Parties of Record